No. 667 July 15, 2026 507

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICOLAS ALEXANDER KEY,
*Defendant-Appellant.*

Klamath County Circuit Court
22CR35469; A183081

Stephen R. Hedlund, Judge.

Submitted May 9, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Rond Chananudech, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

O'CONNOR, J.

Vacated and remanded.

**O'CONNOR, J.**

Defendant appeals a judgment revoking his probation. In a combined argument, defendant raises four assignments of error. He contends that the trial court erred when it found that defendant (1) failed to report as directed to his probation officer on September 7, 2023; (2) committed a new crime by failing to appear in behavioral intervention court on September 12, 2023; and (3) committed a new crime by failing to appear in behavioral intervention court on October 10, 2023. Defendant also argues that the trial court erred when it revoked defendant's probation on those bases. Defendant acknowledges that he did not make those arguments below but contends that preservation should be excused because the trial court deprived him of an opportunity to make closing argument, where he could have preserved the issues that he raises on appeal. Alternatively, defendant requests plain-error review. The state does not defend the trial court's probation violation findings. Instead, the state argues that we should not excuse preservation and that, if we conclude that the trial court plainly erred, we should not exercise our discretion to correct the error.

We do not excuse the requirements of preservation. The record supports a reasonable inference that defense counsel did not intend to give a closing argument during the probation revocation hearing. Thus, we cannot say on this record that the trial court deprived defendant of an opportunity to preserve the issues he raises on appeal. The trial court plainly erred, however, when it found defendant in violation of the conditions of his probation, as defendant argues. The error is not harmless because we cannot determine whether the trial court would have exercised its discretion to revoke defendant's probation absent the erroneous findings. We exercise our discretion to correct the error, and we vacate the probation revocation judgment and remand for further proceedings.

## I.  STATEMENT OF FACTS

Defendant was convicted of attempted second-degree assault, ORS 161.405 (attempt); ORS 163.175 (second-degree assault), based on a no contest plea. On August 15,

2023, during a change of plea and sentencing hearing, the parties informed the court that they had reached an agreement to resolve three cases: the case at issue in this appeal and two cases involving misdemeanor charges. In this case, defendant told the court that he wanted to plead guilty and that he did not remember the events that gave rise to the attempted second-degree assault charge. Defense counsel interjected that defendant would plead no contest, that defendant "had a guilty except for insanity option that he did not want to exercise," and that defense counsel would provide the court with the factual bases for the no contest plea. Defense counsel told the court that someone confronted defendant at a grocery store because they suspected him of shoplifting. "[T]here were words exchanged[.]" Defendant held what appeared to be "a cutting instrument," and he waved "it around close enough to one person" that the person almost drew a firearm to defend themselves. Defendant calmed down, hugged one of the alleged victims, "said thank you[,] and scampered off. He was not well that day." The court accepted the no contest plea on that factual basis.

The court imposed a sentence consistent with the plea agreement. The court imposed a downward dispositional departure from the presumptive prison sentence under the felony sentencing guidelines "because of defendant's enrollment in behavioral intervention court." The court imposed 36 months of probation. The parties agreed that, if the court revoked defendant's probation, it would sentence defendant to 36 months in prison, a sentence within the presumptive guidelines range. The court imposed conditions of probation, including that he obey all laws and "follow all rules, regulations and requests of the supervisory authority," "attend all court hearings at such times and locations as may be further directed by the court," and "[w]ork with the specialty court team, supervising officer[,] and treatment providers to achieve a successful outcome for both defendant and victim."

Defendant appeared in behavioral intervention court on August 29, 2023, and September 5, 2023. Defendant was told to report to his probation officer on September 7, 2023. His probation officer testified that defendant reported

to him on September 7. On September 12, defendant did not appear in behavioral intervention court.

On September 13, the state moved to revoke defendant's probation on those grounds, alleging that defendant "fail[ed] to obey all laws by committing new offense(s) of: FTA warrant on 9/12/23;" "[n]o showed [for counseling/treatment] on 9/6/23 and hung up the phone on mental health provider on 9/11/23;" and "fail[ed] to report as directed: 9/7/23." Defendant was arrested for the alleged probation violations on September 20. On September 27, he was released on a release agreement and agreed to appear in the behavioral intervention court on October 3. He appeared in behavioral intervention court on that date.

The following week, October 10, defendant once again failed to appear in behavioral intervention court. The state filed an addendum to its motion to revoke probation, alleging that defendant violated probation by committing the "new offense" of "FTA [failure to appear] warrant on 10/10/23" and by leaving treatment on October 5, 2023, despite being "directed to respite from jail and not to leave[.]"

The court held a hearing on the motion to revoke probation. The state presented the evidence summarized above. Defendant told the court that he was "not admitting violations" and wanted "to go through with the hearing." Defendant testified that he felt "disrespected" and "lied to" in behavioral intervention court. After defendant concluded his testimony, the trial court immediately made findings without asking for the parties' closing arguments:

"[DEFENDANT]:   I'm not asking mercy here. * * * I'm just speaking the truth. I'm speaking my side of the story.

"[DEFENSE   COUNSEL]: Nothing   further,   Your Honor.

"THE COURT:   All right. [Prosecutor], any questions?

"[PROSECUTOR]:   Thank you. No, Your Honor.

"THE COURT:   Okay. [Defendant], I'm finding you in violation. So the Court notes are very clear. You failed to appear to make it to [behavioral intervention] court

on September 12 and October 10. You failed to report to your probation officer, and then on the 7th as [defendant's probation officer] has testified to. And then you ran from [another probation] Officer * * * when he saw you. I also find that there was a treatment violation in regards to this. So I do find it in violation of the allegations."

## II.   ANALYSIS

Defendant argues that the trial court erred when it revoked his probation, as noted above. Defendant contends that the state failed to prove that he did not report to his probation officer on September 7 because his probation officer, in fact, testified that he *did* report on September 7. Defendant also argues that the state failed to prove that he committed a new crime of failure to appear. The offense of failure to appear requires evidence that a defendant was released from custody pursuant to a release or security agreement and, he argues, the record shows that he was not released from custody pursuant to a release or security agreement when he did not appear at behavior intervention court on September 12 and October 10.

Defendant did not make those arguments below. He argues that his arguments are preserved or that we should excuse preservation, as we did in *State v. Barajas*, 247 Or App 247, 251, 268 P3d 732 (2011), because he contested the probation violations and the trial court did not provide him with an opportunity to present closing argument before finding him in violation of the conditions of probation. Alternatively, defendant requests plain-error review.

As noted above, the state does not defend the trial court's findings on the merits. It responds that defendant's challenges are unpreserved and that, even if we conclude that the error is plain, we should not exercise our discretion to correct it.

A.   *Defendant did not preserve the arguments he raises on appeal.*

We begin with preservation. Defendant did not preserve the issues he raises on appeal, and we will not excuse preservation on this record. A defendant does not preserve a challenge to the sufficiency of the evidence by exercising

his statutory and constitutional rights to a contested pro-bation revocation hearing. *See State v. Wilson*, 313 Or App 166, 167, 493 P3d 1129 (2021) (concluding that a defendant's challenge to the sufficiency of the evidence of a probation violation was unpreserved when the defendant did not make that challenge). A defendant must alert the trial court to the alleged deficiencies in the state's evidence to preserve the issue for appeal. *State v. Paragon*, 195 Or App 265, 268, 97 P3d 691 (2004) (explaining that even a generic motion for judgment of acquittal does not preserve a specific challenge to the sufficiency of the state's evidence). Here, defendant did not make any particular challenge to the sufficiency of the evidence, as he acknowledges. Thus, his arguments on appeal are unpreserved.

The requirements of preservation are not excused on this record. In *Barajas*, the claimed error on appeal was the denial of closing argument. 247 Or App at 249-50, 253. We concluded that the defendant had done all they could to preserve the issue for appeal because the trial court expressly cut off defense counsel's two attempts to give clos-ing argument, which also prevented defense counsel from preserving an objection to foreclosing closing argument. *Id.* at 253. By contrast, in this case, defendant asks us to assume that defense counsel would have made the same argument regarding the legal sufficiency of the evidence that he raises on appeal if the court had permitted closing argument. That is not the same scenario as *Barajas*, and we will not excuse the requirements of preservation in this case.

B.   *The trial court plainly erred.*

However, as we explain in more detail below, we conclude that the trial court plainly erred, and we exercise our discretion to correct the error. We vacate the judgment revoking probation and remand to the trial court for further proceedings.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to correct a "plain" error. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably

in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If we conclude that a plain error occurred, the next question is whether it was harmless, as we cannot reverse a judgment based on harmless error. *State v. Ortiz*, 372 Or 658, 671, 554 P3d 796 (2024). An error is harmless if there is "little likelihood" that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Finally, if an error is both plain and not harmless, we must decide whether to exercise our discretion to correct it. *Ortiz*, 372 Or at 672.

The Supreme Court has identified a nonexclusive list of factors that may be relevant in deciding whether to exercise our discretion to correct a plain error: "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served[.]" *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). "Those factors do not comprise a necessary or complete checklist; they merely are some of the permissible considerations." *Id.*

Here, the error is plain. First, whether the record contains sufficient evidence to establish a violation of a condition of probation presents a legal question. *State v. Austin*, 344 Or App 368, 370, 580 P3d 348 (2025).

Second, the errors are obvious on the face of the record. Defendant was convicted of a felony and sentenced to probation. In a felony case, a trial court may revoke a defendant's probation "upon a finding that the offender has violated one or more of the conditions of probation, or that the offender has participated in new criminal activity." OAR 213-010-0001; *see also State v. Kelemen*, 296 Or App 184, 186, 437 P3d 1225 (2019). Here, the state's evidence did not establish that defendant committed a crime when he failed to appear at behavioral intervention court. And the state's evidence did not establish that defendant did not report to his probation officer on September 7. The insufficiency of the evidence on both alleged violations is obvious and not reasonably in dispute, as we explain in more detail below.

Defendant was subject to a general condition of probation that required him to "[o]bey all laws, municipal, county, state and federal[.]" ORS 137.540(1)(h). The state alleged and the court found that defendant committed new criminal activity when he failed to appear at behavioral intervention court on September 12 and October 10. The question for us on plain-error review is whether it is reasonably in dispute that defendant committed a new crime when he failed to appear at behavioral intervention court on those dates.

The state and the trial court did not identify the statutory basis for defendant's alleged crime of failure to appear, and the state makes no attempt to do so on appeal. The crime that might apply is failure to appear in the first degree, ORS 162.205, which provides:

"(1)   A person commits the crime of failure to appear in the first degree if the person knowingly fails to appear as required after:

"(a)   Having by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a felony; or

"(b)   Having been released from a correctional facility subject to a forced release agreement under ORS 169.046 in connection with a charge against the person of having committed a felony."[1]

The offense of failure to appear generally applies when a defendant is released from pretrial custody or

---

[1] Failure to appear in the second degree, ORS 162.195, is identical except that it prohibits the failure to appear in connection with a misdemeanor charge. As noted above, defendant was charged with and convicted of a felony and thus first-degree failure to appear is the potentially applicable offense.

In the trial court, neither the parties nor the court cited to a particular statute for the proposition that defendant had committed the crime of failure to appear. On appeal, defendant cites to ORS 162.195 and our case law interpreting that statute to argue that the evidence is insufficient to establish that he committed the offense. As we discuss in the body of the opinion, we have previously explained that the legislature intended ORS 162.195 and ORS 162.205 to have the same meaning, except that ORS 162.195 applies when a person is charged with a misdemeanor and is a misdemeanor offense and ORS 162.205 applies when a person is charged with a felony and is a felony offense. Accordingly, we address the merits of defendant's argument under the correct statute, ORS 162.205.

released from custody pending appeal pursuant to a release agreement. *State v. Tally*, 184 Or App 715, 719, 57 P3d 592 (2002) (interpreting "release agreement" in ORS 162.195); *see also State v. Crawford*, 208 Or App 340, 347-48, 144 P3d 1073 (2006) (noting that our statutory construction of ORS 162.195 in *Tally* applies equally to ORS 162.205). Applying that understanding of the statute, we held in *Tally* that a defendant does not commit a failure to appear when he fails to appear for a probation violation hearing because a defendant's "obligations under his pretrial release agreements" did not "extend beyond entry of judgment of conviction." *Crawford*, 208 Or App at 348 (citing *Tally*). Similarly, "forced release" as used in ORS 162.205(1)(b) refers to a defendant's release from custody when the local jail population exceeds capacity as set forth in ORS 169.046.

Here, it is not reasonably in dispute that the state failed to produce evidence that defendant violated ORS 162.205. Defendant failed to appear after entry of the judgment of conviction, while on probation. He had not been released from custody pursuant to a release agreement or security release as those terms are used in ORS 162.205(1)(a). *Tally*, 184 Or App at 719. He had not been subject to "forced release" as that term is used in ORS 162.205(1)(b). The state does not argue on appeal that the evidence was sufficient to establish that defendant committed the crime of failure to appear, as noted above. Under the circumstances, it is obvious that the trial court erred when it determined that defendant violated his probation by committing the crime of failure to appear when he did not appear at behavioral intervention court on September 12 and October 10.[2]

The trial court also plainly erred when it found that defendant failed to report as directed to his probation officer on September 7. That finding is directly contrary to the evidence in the record that defendant did, in fact, report on that day. Defendant's probation officer testified on direct examination that defendant had reported on September 7:

_____

[2] Defendant's failure to appear might have violated some other condition of probation. The state did not allege a violation of a different condition based on defendant's failure to appear at behavioral intervention court, however, and that issue is not before us on appeal.

"[THE PROSECUTOR]:   Q:   *** Did you give [defendant] a specific direction to report to you and the probation office on the 7th of September 2023?

"[PROBATION OFFICER]:   A: Yes.

"Q:   And did he show up on that date?

"A:   Yeah."

Whether the record contains sufficient evidence to establish a probation violation presents a legal question. *Austin*, 344 Or App at 370. The error is obvious, and it is apparent on the face of the record. We do not understand the state to argue otherwise on appeal.

C.   *The errors were not harmless.*

The errors prejudiced defendant. The state alleged, and the trial court found, five probation violations. We have concluded that three of those violations were not supported by legally sufficient evidence. Defendant does not challenge the other violations on appeal. The trial court did not explain whether it would have revoked defendant's probation based on any single violation. We cannot determine on this record whether the trial court would have exercised its discretion to revoke defendant's probation and impose 36 months in prison if it had considered only the probation violations supported by legally sufficient evidence. *See Austin*, 344 Or App at 373-74 (explaining that an erroneous probation violation finding was prejudicial under similar circumstances). Thus, the errors are not harmless.

D.   *We exercise our discretion to correct the errors.*

That leaves the question of whether we should exercise our discretion to correct the errors. As both defendant and the state recognize, we have previously exercised our discretion to correct a trial court's plainly erroneous probation violation findings when a trial court relies on the erroneous findings, at least in part, to exercise its discretion to revoke a defendant's probation. *See, e.g., State v. Rivera-Waddle*, 279 Or App 274, 280, 379 P3d 820 (2016) (explaining that the gravity of the error weighed in favor of exercising our discretion to correct the error because we could not determine the extent to which the trial court relied on

an erroneous basis to revoke probation). The gravity of the errors also weighs in favor of exercising our discretion here for the same reasons that the errors are not harmless, given the ends of justice in this case.

The state argues that we should not exercise our discretion to correct the error because it is "unlikely that the trial court will change its revocation decision on remand." The state points to defendant's personal statements to the court in which defendant said he was "fine" with the court continuing probation or revoking probation, arguing that defendant's statements illustrate that he held an "implausible belief that his participation in treatment and probation was 'voluntary.'" The state also notes that his probation officer's report said that defendant did *not* report as required on September 7. As noted, however, the probation officer testified at the probation revocation hearing that defendant *did* report as direct on September 7. The state argues that a defense objection "could have obviated the error" because if "defendant had objected" then the probation officer "could have clarified if he was mistaken in his testimony." We are unpersuaded by those arguments.

First, as noted above, we cannot determine whether the trial court would have revoked defendant's probation if it had not erroneously found three of the five probation violations before it. In this case, the trial court knew that defendant struggled with mental illness. The parties told the court when defendant pleaded no contest that defendant's mental illness had played a role in the offense, and the plea agreement recognized that by recommending a downward departure to probation with a condition that defendant attend behavioral intervention court. The trial court sentenced defendant consistent with the plea agreement. Throughout defendant's probation, the trial court knew that defendant was supposed to be attending treatment. One of defendant's problems on probation was that he was not attending treatment, and thus the parties and the trial court were aware that defendant's mental illness was very likely untreated. In that context, the trial court may have viewed defendant's "implausible beliefs" about behavioral intervention court and probation as symptoms of his

mental illness, and we thus cannot say that the trial court would have relied on defendant's statements to revoke probation and impose a 36-month prison sentence if the court had found only two violations.

Second, we disagree with the state that an objection from defense counsel might have changed the evidentiary record. The probation officer was asked directly whether defendant reported on September 7. He responded, "Yeah." The state had the burden to establish a probation violation, and it plainly failed to meet it on this record. We understand the state to mean that a defense argument that the evidence was insufficient would have alerted the state to the error, the trial court would have permitted the state to re-call the probation officer, and the probation officer would have testified that defendant did not report on September 7, contrary to the probation officer's testimony on direct examination . That argument does not persuade us to decline to exercise our discretion in the circumstances of this case.

In sum, defendant's probation was revoked, and he was sentenced to 36 months in prison based on three probation violation findings that were not supported by legally sufficient evidence. We cannot say on this record whether the trial court would have revoked defendant's probation if it had not relied on the erroneous findings. The gravity of the error, the ends of justice, and the competing interests of the parties persuade us to exercise our discretion to correct the error.

For the reasons explained above, we conclude that the trial court plainly erred, and we exercise our discretion to vacate and remand for further proceedings.

Vacated and remanded.